24, 2580 U.S. v. Pattison Good morning, Your Honors. You may have pleased the court. Tim Murphy, representing Mr. Pattison. Your Honors, I'd like to address the unwarranted disparities issue, as well as an issue under 4A1.3 regarding the departure. I would just remind the court also that the government's conceded on the Majorana issue on the supervised release. I won't address that unless the court has questions on it. Just to set the scene a little bit, the court will recall that in 2022, my client was sentenced to 96 months on an above-guideline sentence. In 2023, he was in prison and participated in an assault on another inmate. 2024, early in the year, this court remanded the case on a technical issue. He came back for resentencing in September 2024. My client received 108 months, which was more than double the maximum of the guidelines at the time, which were reduced at the time. Your Honors, everyone in the courtroom knew that the sentencing court here was going to impose a sentence that was above the guidelines. The court gave proper notice. Everyone knew it was coming. So defense counsel made sure it brought to the court's attention the unwarranted disparities issue. You'll see on pages 155 to 160 of the record, it's set out with all the data. You'll see on page 275 and 276. Unwarranted disparities include the subsequent conduct that your client engaged in in prison. I mean, this was a very serious assault. I think there are images in the file. He slashed someone's neck, basically, across his face. Do the disparities include taking into consideration that subsequent conduct? Actually, not in any way to diminish how serious the conduct is. I would point out that some of the statistics that were presented by defense counsel included 2K2.1 cases where death resulted. And even then, it was only in the mid-90s in the number of months. Our point, and giving all due respect to this court's standard, when an argument is properly made before a district court, this court presumes that it's considered unless it's clear from the record otherwise. And what I would like to do is just point out five different parts of the resentencing where I think it indicates otherwise. If you look at page 211 and 212, Judge Larimer gets into these eight factors under 3553. All of them have to do with A1 and A2. And that's fine. The court sets those out. Page 253, the court says, relative to those eight factors, I believe a variance is appropriate. And I'm not cherry-picking. I just have two more to give you. Page 255, I think under section 3553A, examination of those factors, again, and then critically, at 288 of the record, the court in every case must consider the sentencing factors under 3553A. Those are the eight of them here. Yes, Judge. Counsel, I would like you to address the question of whether this assault in jail was of the same kind as the others and whether, if it was not, we should follow the Fourth Circuit or follow all the other circuits and say it's still all right. Because that, for me, frankly, is the only issue. The rest is something we hear all the time and, frankly, never gets anywhere. Thank you, Judge. And I would like to address the Nixon decision from 2025. I think it's a very persuasive decision for a couple of reasons. That also is a felon in possession, 922G1, and a post-plea prison attack. That was a stabbing. Ours is a slashing. One thing that the court observed in Nixon, and this is at pages 430 to 433, is that in 2003, 4A1.3A2, that introductory paragraph, was amended. It had said included but not limited to before. That's a fact. But the word may is still there. And in addition, there are mentioned a couple of things that may not be taken into account that are not on the list. So why would they be taken into a mention specifically as barred if they couldn't be taken in anyway? I point to a point. Why doesn't one then treat the change as being, may, you still may, and the other not exhaustive? Because otherwise, why are the other two barred? There's no question that may include that there can't be other factors considered. But the specific topics covered by those five examples we believe need to be written need to be considered on their text. The Commission went to the trouble of saying prior similar conduct, just like what civil misconduct was another example. They did that because of recidivism. Prior similar conduct. But in this Court said in Mayo that prior conduct need not be identical type. And so I think we're trying to get at the similarity between your client's prior conduct in this assault in prison, which appears to have been motivated by the same positions or views your client had. So that allegedly, the assault, or by his own words, he assaulted this inmate because he sold a gun to a black prisoner, and he's part of a white supremacist group, and that was a violation of their code. And the judge, I thought, went through in detail in the resentencing about the concerns he had that your client would engage in precisely this type of conduct. How is that not similar conduct if the motivation is the same? Can we get to that? Yes, absolutely. So the word you just used, and I was going to use it, is motivation. So when we look at 4A1.2, and this is A2E, the Commission went out of the way, out of its way to say similar conduct. And why? Why does it use the word conduct and not motivation there? It's concerned about recidivism. The conduct that took place in prison was under such different circumstances. The Court has before the declaration we have from our BOP expert, we spent about a quarter century in the BOP system, explaining what most of us probably already knew, and that is that there's a hierarchical system in prison. It's not as if he was just walking down, walking through the hallway of the prison and decided to slash someone. He was under orders to do it. My friend at Custodial disagrees that the comments by my client indicates that. Our expert says that it does, that those comments putting in work. So we could debate that. That's fine. Yeah, I'm trying to. I understand his argument was, well, I had no choice. I had to do my job. In a sense, in a sense. But that doesn't take it away from being a similar conduct in a sense that it's a racially motivated attack. But the conduct itself is completely different because of the circumstances that it took place. My client possessed a shotgun and a rifle in rural upstate New York, a place where many people have shotguns and rifles. That's a completely different circumstance than being under the compulsive atmosphere and system of federal prison gang life. It's a completely different act because of the circumstances that it took place. You can find a common denominator there, the issue of race. That's true. But what the commission was focusing in on here is the conduct itself. The simple possession of rifles and shotguns in a rural residence upstate, completely different from being under the gun of a violent federal gang system. And I think that's the point that we're trying to raise through the declaration of our BOP expert. Thank you. You've reserved a couple of minutes for rebuttal. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. And may it please the Court. Brett Harvey, appearing for the United States. I am the AUSA who handled this case before the district court at both the original sentencing and at the resentencing. This court should affirm the judgment of the district court in all respects except to grant a limited remand to address the mayor on issue. We have conceded that in our brief. The government submits that the above guideline, 108-month sentence in this case, was both procedurally and substantively reasonable. As this court is aware, the district court properly imposed a three-category upper departure under section 4A.1.3 of the guidelines for the inadequacy of the defendant's criminal history category, and a four-level upward variance under 3553A. Before I proceed to the guts of my argument, I do want to address a couple of the things that counsel said at the end of his argument there. First of all, with respect to the information from the BOP expert as to the reason that the defendant carried out the prison slashing, we do take issue with its characterization of this as essentially a situation where the defendant committed that assault under duress. That is not supported by the record. I will acknowledge that Mr. Patterson, after he committed the attack, did state to prison authorities that the fact that the ultimate victim was selling weapons to another race in the facility did not go over well with other inmates in his particular area of the prison, presumably the gang that he belonged to, and that it was his turn or it was his time to put in the work. Nothing about that screams duress or coercion or that this defendant was in any way —   It is highly in the discretion of the district court. Now, the district court clearly thought this was terrible and gave a very high sentence, but was that sentence substantively so high that we should reverse it? Well, there are a number of factors in this case that supported this sentence. And the prison slashing was obviously the most heavily weighted factor for the court. The judge said it on the record multiple times that he could not believe, he could not fathom that this defendant, after going through the first sentencing where the district court stated its concerns that he would commit new crimes, within 16 months of that sentencing, he's in prison slashing a fellow inmate across the face, and in the judge's estimation, commit the crime of attempted murder, or at the very least, assault with a deadly weapon. So that was certainly the most heavily weighted factor. But the judge did go through the text of 4A13A2. Your friend on the other side emphasized the removal of the phrase, but not limited to, and I just want to hear how you address that point. Yes, Your Honor. So the particular guideline here, 4A1.3, was amended in 2003, and it was restructured to clarify the standard for imposing the departure under that subdivision, or under that guideline. And at the time it was amended, the court, or the sentencing commission did remove the language that said, including but not limited to, it left in notably the language that said may include, and then listed the types of information that may be considered by a court in assessing whether a departure is appropriate under that section. I will note that if you look at Amendment 651, which is the amendment that implemented the current guideline, nowhere in that amendment, and the explanation for that amendment, the sentencing commission say that they were changing the law and now going forward requiring a court to consider only the factors set forth in subsection A2. It's not in their explanation of that particular amendment. I think that's significant because this court has said in other cases construing sentencing guidelines that you're to interpret the language of a guideline based on the common everyday meaning of the terms unless there's a clear manifestation of an intent to construe the term in another way. So I guess the argument is when you remove the phrase but not limited to, then may can change from permissive to a more restrictive meaning. And they could have been more clear. I mean, they could have said only include, but it didn't do that. So why is that not a step in the direction towards exclusivity? I acknowledge that is a step in the direction. If I were making an argument on the other side, I would say that is definitive proof. But it's not if you look at it in the context of the actual language explaining the amendment in 2003. Why isn't your strong point that when they made the change, they still left as prohibited several factors which are not in the list? Why would they have left them as prohibited if they were already prohibited by the change? Judge, I couldn't agree more. And I was going to get to that. I would draw the Court's attention to the split panel in the Nixon case that counsel cites. The dissenting judge in that case, Judge Davis, raised that very point when she disagreed with the majority and said that, in her view, subsection 4A1.3A2 is an illustrative, non-exhaustive list of factors that could be considered by the Court. And in doing so, she said — excuse me — she wrote that, based on the language that's in 4A1.3 about things that are prohibited, it's clear that the Sentencing Commission knew of its authority and its ability to do that and chose not to here, and instead left in the language about — Counsel, I would also like you to address whether, apart from that, this behavior was of like kind, because that affects whether, on this issue, we have to decide something which is split the circuits or whether we can go along, assuming we buy all the rest, without it. And that's an important issue in deciding what we do. Before I do that, Judge, I will note that this particular departure no longer exists under the guidelines. So if this Court chooses to take a different route here and go with the Fourth Circuit, it would be something that would not be having much impact on the road, at least for cases that are going to be in the pipeline later. But, Judge, I think there is a similarity in conduct here, and I should have addressed this more in my brief, but I was defending the rationale of the lower court, who found the list of factors was not exhaustive. But I will say that, picking up on what Judge Kahn said earlier, there is certainly similarity between the prison slashing and the defendant's offensive conviction in this case. First of all, there is a similarity in motivation. As we said earlier, the defendant expressly admitted to prison authorities that he slashed the fellow inmate because he was selling weapons to another race. So we refer to that as racially tinged or racially influenced conduct before the lower court, because obviously the victim was a Caucasian, not of a different race. But it was, in my opinion, racially motivated. I will take issue with what counsel said earlier in describing the offensive conviction in this case. He described this offensive conviction as a defendant from rural upstate New York who was simply possessing a shotgun and a .22 caliber rifle. And he just said, it's a simple possession. It's different from the prison assault. I will say that he leaves out a lot of context there. And the context that he leaves out is the Facebook posts, messages, and rantings of this defendant in the three to four months preceding his acquisition of the two firearms and the ammunition in this case. At that time, it began in about May of 2020. There were widespread protests and, at some points, riots occurring in Rochester, New York, over the George Floyd case and over the death of another individual named Daniel Prude during a police encounter in Rochester, New York. So there was a lot of activity going on in and around that time frame. And at that time, with all that in mind, the defendant took to Facebook on many occasions and not just stated his white supremacist beliefs, but also, and most importantly, threatened to kill black people and protesters. And he did it multiple times. At one point, threatening to kill black children to clean the bloodlines. At another time, the same day that he acquired possession of the shotgun, threatening to kill black people by pumping shells in their head. And on that same day, also threatening to kill protesters at what he referred to as a genocidal rape, likening himself to a new Joseph Mengele. Well, wouldn't... Please, please. And when it comes to similarities, wouldn't we start with they both involve illegal possession of a weapon, don't they? Yes. He was not allowed to have the razor blade or the toothbrush turned into razor blades or melted razor blades in it, in prison. So don't they both involve similar conduct in that they both involve illegal possession of weapons? Absolutely, Judge. Absolutely. It involves both illegal possession of weapons and they're both tied to racial animus and racial motivation. That is the point that was not accepted by the Nixon Court, but I think that is a point that Judge Davis and Nixon made very persuasively in her dissenting opinion. You mentioned the provision here has been repealed and which makes it of diminishing importance, but I'm wondering if you have a sense, and you may well not, of how many people have been sentenced or have gotten an upward departure from, based on the old provision. Well, I will say this, Judge. I've been doing this for about 24 years and the two times that I've had this come up is this case, both the original sentencing and the resentencing. I'm not aware of, I mean, certainly not used widespread in the district court in the pipeline from our neck of the woods. That's helpful. Thank you. Thank you, Your Honor. Thank you. We'll be right back. Your Honor, if I could take this one at a time. The issue about him not being under duress, I would just ask the Court to consider pages 189 and 90 of the record. That is Mr. Lee from the BOP that gives us that declaration. Paragraphs 38 and 39, he sets out what I was discussing before. I can only address it through his words. Counsel had mentioned that the district court went through all the factors again. I'm not trying to nitpick what he's saying, but I would ask the Court to consider pages 211, 212, 253, 255, and 288 to 290. Those are the descriptions from the district court about the 3553A factors. I'd ask you to consider that in response to what he had just said. The amendment in 2003 was to put more guardrails on the district courts. I recognize Judge Calabresi's point. I'm not trying to say that there was no discretion left beyond those five examples. What I am saying is that the commission went out of its way, not just with specificity, but with purpose in those examples. Think about it. Why would they be concerned with similar conduct? It's recidivism. Why would they be concerned with similar conduct for a civil misconduct, which is another example on that list? It's recidivism. They're concerned about specific purposes. The topics covered in that list we do say is exclusive. We don't say it's exclusive for all factors that the Court may consider. That introductory paragraph talks about information. The information can include these specific topics. If there's another topic that the Court wants to consider, that's fine. But when you're dealing with prior criminal conduct that's not been prosecuted, we believe that is the question.  Could you address Judge Kahn's point that both involved illegal possession of a weapon? I can't disagree with that proposition. That's true. What I would say is that the circumstances are just so different between the residential possession and the conduct that took place in prison. Yes, but given what you've said, that some things may be taken into account, well, the circumstances are different. If there is that similarity, given what you have said, isn't that covered? It's not because the Commission went out of its way to address the topic of prior criminal conduct that hasn't been prosecuted. That has to be my answer to that, Judge. Yeah, I think I would leave it at that, Your Honor. I hope that answers it. Thank you. Thank you both. We'll take the case under advisement.